**Glenn Morris CAIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 53421.

Court of Criminal Appeals of Texas.

June 8, 1977.

Calvin A. Hartmann, on appeal only, David B. Ziegler, on appeal only, Houston, for appellant.

Carol S. Vance, Dist. Atty., Alvin M. Titus and John B. Holmes, Jr., Asst. Dist. Attys., Houston, Jim D. Vollers, State's Atty., David S. McAngus, Asst. State's Atty., Austin, for the State.

OPINION

DALLY, Commissioner.

This is an appeal from a conviction for the offense of rape under the former Penal Code; the punishment is imprisonment for 50 years.

Appellant contends the evidence is insufficient to support the conviction. We must agree. This record presents unusual facts showing the commission of a number of closely related, interwoven criminal offenses. Although the evidence may be sufficient to prove the appellant was guilty of kidnapping, robbery, burglary, theft, assaults, and of being an accomplice in the offense of rape, the evidence is insufficient to show the appellant committed the offense of rape or that he was guilty of the offense as a principal. The State's predicament stems from the failure of a co-defendant to testify as it was expected he would. The State plead surprise and was permitted to impeach the accomplice witness, but this did not aid the State in proving necessary elements of the offense.

The prosecutrix and her date, Raymond Rubach, went to a nightclub in Houston on February 24, 1973. As they got out of their car at the club a man approached Rubach and asked for a ride. Rubach refused and the man pulled a gun on him. At the same time another man approached the prosecutrix on the other side of the car with a gun. The prosecutrix identified the appellant as the man who held a gun on her. She could not identify the man who first approached Rubach and Rubach could not identify either of the men. Rubach and the prosecutrix were forced back into Rubach's car and appellant and the other man got into the back seat. The abductors ordered Rubach to turn the rear view mirror up and both he and the prosecutrix were ordered not to

turn around. Later, Rubach and the prosecutrix were placed in the back seat of the car and told to keep their heads down.

Rubach and the prosecutrix were taken to an unfurnished garage apartment where the abductors were joined by two more men. This apartment was the appellant's apartment located on Binz Street. The prosecutrix and Rubach were tied up, blindfolded, and robbed of their money. The abductors also had another hostage at appellant's apartment named Thomas Flowers. Soon after the prosecutrix and Rubach were brought to appellant's apartment, Flowers was released. Rubach was struck on the head by the abductors when he told them he did not have any more money. The abductors then struck the prosecutrix on the head, which caused her to bleed "real bad." About an hour later, Rubach and the prosecutrix, still blindfolded, were driven to another location.

The second location was shown to be an unoccupied, run-down shack located on Lydia Street in Houston. Rubach, still blindfolded, was placed in a corner of the shack, tied up, and someone held a shotgun on him. The prosecutrix, still blindfolded, was then brought into the shack and told to take her clothes off. When she refused, her clothes were ripped off. The prosecutrix was raped three or four times by the men. She was also forced to perform acts of sodomy on more than one of the men. A gun was held against the head of the prosecutrix and she was told not to struggle. She could not identify the appellant or any of the men who raped her because she was blindfolded. She also could not determine whether appellant was present at the shack on Lydia. Rubach also could not determine if the appellant was present at the shack or whether he participated in the rape.

After the men had raped the prosecutrix, they left her and Rubach in the shack. After Rubach and the prosecutrix untied themselves, one of the men involved in the offense, Curtis Johnson, came back to the shack to help them. The prosecutrix, Rubach, and Johnson walked to a service station and called the police.

Thomas Flowers testified that he was abducted and robbed by three black men on February 24, 1973, in Houston. He was taken in his own car to appellant's garage apartment on Binz Street where he was tied up, blindfolded, and gagged. Flowers was held for approximately twenty-four hours at the appellant's apartment. During this time the abductors burglarized Flowers' apartment. The men took several items of property including a guitar, amplifier, and some stereo equipment. Flowers later recovered some of the property at a pawn shop called Money Unlimited. Flowers testified that while he was being held at the garage apartment the abductors brought in a man and a woman against their will. Flowers said that the man's name was Raymond. Flowers was released shortly after the man and woman were brought to the apartment.

Donald Fantish testified that he was the owner of the Money Unlimited pawn shop. On February 24, 1973, four black men came to his pawn shop to sell some property. Fantish identified the appellant as one of the men from whom he bought the property. He also identified Curtis Johnson as another of the four men. The property the four men sold to Fantish was some of the property taken from Flowers' apartment.

Louisiana State Trooper Joseph Bertrand testified that he investigated a traffic accident in Louisiana on February 25, 1973. Bertrand identified the appellant as one of the persons involved in the accident. The appellant was driving a 1972 gold Pontiac with Texas license plates number SJZ 867; this was the car taken from Rubach. The appellant was the only person in the Pontiac, which was severely damaged in the accident. Bertrand found a revolver in the trunk of the Pontiac appellant was driving. Both Rubach and the prosecutrix testified that this revolver was the same or a weapon similar to the one that was used by the men who first abducted them at the nightclub.

Curtis Johnson testified as a witness for the State. On February 23, 1973, Johnson met the appellant at his garage apartment

on Binz Street. Johnson was present when Thomas Flowers was abducted and robbed, but said he was not armed and did not participate in abducting Flowers. He testified that a man named Norman Gladney and two other men he did not know abducted Flowers. He said the appellant was not with them when they abducted Flowers, but the appellant was at the garage apartment when they brought Flowers back. The appellant was with Johnson and the other men when they burglarized Flowers' apartment and was also present when they sold Flowers' property at the pawn shop.

Johnson testified that he was at the appellant's garage apartment when the appellant and Gladney brought Rubach and the prosecutrix there. Johnson went with the men when they took Rubach and the prosecutrix to the shack on Lydia Street. Johnson said he did not know who was in the car with Rubach and the prosecutrix when they drove to the shack because he rode in a second car. Rubach and the prosecutrix, however, had both testified earlier that Johnson was the driver of the car they were in. Johnson was present in the shack when the prosecutrix was raped, but denied that he participated in the rape. He stated that the shack did not have lights and that it was still dark. Johnson said he did not know if the appellant was present at the shack because it was dark. Johnson stated that he did not see the appellant at the shack.

Under the law of the former Penal Code defining principals, Articles 65–69, V.A.P.C. (1925), there are six different fact situations, explained in *Middleton v. State,* 86 Tex.Cr. 307, 217 S.W. 1046 (Tex.Cr.App. 1919), in which one may be guilty as a principal to a felony offense. They are:

"(1) When A. actually commits the offense, but B. is present, knowing the unlawful intent, and aids by acts or encourages by words.

"(2) When A. actually commits the offense, but B. keeps watch, so as to prevent the interruption of A.

"(3) When A. is actually executing the unlawful act, and B. engages in procuring aid, arms, or means of any kind to assist while A. executes said unlawful act.

"(4) When A. actually commits the offense but B., at the time of such commission, is endeavoring to secure the safety or concealment of A., or of A. and B.

"(5) When A. employs an innocent agent, or by indirect means causes the injury, or brings about the commission of the offense.

"(6) When A. advises or agrees to the commission of the offense, and is present when the same is committed, whether he aid or not."

The court further explained:

"Of these six statutory ways in which parties may act together and be principal offenders, it will be seen that two only require the presence of the coprincipal with the one actually doing the criminal act, while four make him a principal though physically absent from the scene of the crime; but no confusion will arise if we keep clearly before us the underlying principle that in every case, no matter what phase of the law is involved, the evidence must show, and the charge of the trial court submit, that at the time of the commission of the offense the parties must be acting together, each doing some part in the execution of the common purpose. As is well set forth in the *Cook Case* [*Cook v. State*], 14 Tex.App. 96, just here lies the line of cleavage between accomplices and principals; that is, *that unless the accused be then actually doing something which associates him with the execution of the unlawful act at the very time it is done, he would not be a principal.* It would be immaterial which one of the six methods mentioned he pursues, but he must be doing something in some one of the ways enumerated." *Middleton v. State,* supra. (Emphasis added.)

■ To be guilty of a felony as a principal, a defendant must be actually present at the time of the commission of the offense or, if not present, he must be actively engaged in the furtherance of the common purpose and design at some other place. *Robinson v. State,* 493 S.W.2d 780 (Tex.Cr.

App.1973); *Barnett v. State*, 106 Tex.Cr.R. 179, 291 S.W. 540 (1927).

■ In this case the record shows that the appellant and Norman Gladney kidnapped Rubach and the prosecutrix. The evidence also shows that the appellant was in possession of Rubach's car the day after the rape occurred. However, no witness could place the appellant at the shack where the prosecutrix was raped. Nor could any witness testify as to what the appellant was doing at the time of the rape.

This offense occurred prior to the effective date of the new Penal Code which has abolished the distinctions between principals and accomplices. V.T.C.A. Penal Code, Section 7.01(c). While the facts show that appellant was an accomplice, under the former Penal Code an accomplice could not be convicted as a principal. *McClelland v. State*, 373 S.W.2d 674 (Tex.Cr.App.1963); *Anzualda v. State*, 115 Tex.Cr.R. 509, 27 S.W.2d 231 (1930). The evidence is insufficient to support appellant's conviction for rape.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.