TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00478-CV






A. James Lynn, Appellant



v.



Board of Law Examiners of the State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. 96-05917, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING 







 A. James Lynn appeals from the trial-court judgment that affirms an order of the
Board of Law Examiners (the Board) finding that appellant did not presently possess the good
moral character required for admission to the Bar of Texas. See Tex. R. Governing Bar
Admission 4 (Admission Rules). We will affirm the trial-court judgment.


The Controversy



 In February 1996, the Board held a hearing concerning Lynn's character and fitness
and rendered an order finding that Lynn lacked presently the good moral character to be eligible
for a law license. (1) The Board based its finding on several factors that showed character traits
making Lynn unfit to practice law: (1) he had engaged in acts constituting the unauthorized
practice of law; (2) he had been publicly reprimanded by the Texas State Board of Public
Accountancy and subjected to a consent order prohibiting his performing audits and reviews in his
capacity as a certified public accountant; and (3) he had violated various rules in dealing with
projects subject to Department of Housing and Urban Development (HUD) regulations.

 The Travis County District Court, under the substantial evidence manner and scope 
of review, affirmed the Board's order. On appeal, Lynn brings ten issues (2) denominated as
follows: "setting of hearings on weekends; res judicata & collateral estoppel; constitutionality of
unauthorized practice of law; substantiative [sic] evidence; clear and rational connection; right to
jury trial; trial court's refusal to allow HUD order into evidence; period for re-petition; findings
of fact in administrative hearings; due process."


Substantial Evidence



 In issue four, Lynn contends there is not "substantive evidence" to support the
Board's order. "Substantial evidence" means simply "such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 564-65
(1988) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

 Unauthorized Practice of Law. The record reflects numerous instances
demonstrating that Lynn had systematically engaged in the unauthorized practice of law. For one
client, Lynn prepared a mineral and royalty deed for which the bill read: "services rendered in
connection with the conveyance of royalty and mineral deeds to limited partnership." For that
same client, Lynn prepared articles of incorporation and bylaws. The record also shows he
prepared two other deeds of general warranty for different clients. It shows a contract for sale and
a noncompetition agreement prepared by Lynn. It shows two other incorporations done by Lynn,
a draft of a lease assignment, and a contract for the sale of common stock.

 Furthermore, the record shows a letter from Lynn to a client giving legal advice
on particular litigation: he analyzed the impact of testimony of certain witnesses on the verdict;
gave advice on filing a motion for rehearing; estimated the chance of success for an appeal to the
Fifth Circuit Court of Appeals; gave advice on whether a second suit should be settled; and for
yet another piece of litigation he gave advice on the impact of the burden of proof. In another
letter to the same client he gave advice concerning a supersedeas bond and possible alternatives
and also advised against attempting to pressure a judge to act more quickly. Lynn entered into an
agreed permanent injunction against his practicing law without a license. Lynn attempts to read
this order as exculpatory; however, nothing in the order, which was prospective, suggests a
finding exculpatory of Lynn's past practices.

 Accountancy Board Findings. There is also evidence in the record showing that
Lynn violated the regulations under which he was licensed as a certified public accountant (CPA). 
The Accountancy Board found that Lynn committed numerous violations of the Public
Accountancy Act and the Board of Public Accountancy Rules of Professional Conduct in
connection with audits of financial statements for HUD-supervised projects: performance of
professional services without due competence, 22 Tex. Admin. Code § 501.21 (1998); implying
services were provided as an independent public accountant when financial statements were not
in compliance with generally accepted accounting standards, id. § 501.22; issuing a report
asserting that financial statements conformed with accepted accounting principles when they did
not, id. § 501.23; failing to comply with professional standards, id. § 501.24; and violation of the
rules of professional conduct, Public Accountancy Act, Tex. Rev. Civ. Stat. Ann. art. 41a-1, 
§ 21(c) (West Supp. 1999).

 HUD Regulatory Violations. The record contains evidence that Lynn provided both
audit and bookkeeping services to the same client in violation of applicable HUD standards. In
fact, Lynn admitted that he acted both as bookkeeper and "independent" auditor on certain HUD-subsidized projects in violation of applicable federal standards. He defended his actions by
asserting that HUD inconsistently enforced this prohibition. There was also evidence that Lynn
failed to comply with other HUD program requirements because he failed to prepare audit plans
properly, failed to demonstrate understanding of internal controls, failed adequately to supervise
employees, and gave misleading information to HUD through false reports relating to a loan.

 A former employee testified that he had expressed to Lynn concerns about
violations of HUD requirements, which Lynn ignored. The employee found "missing" files
related to the HUD audits which Lynn had hidden in a closet to avoid "leaks." Lynn's explanation
of the auditing irregularities was that he believed the practices involved were acceptable
investment practices. Lynn claims he did not report any irregularities to HUD because he was
afraid it would "wave a red flag" and result in problems for him and his client.

 Credibility. Much of Lynn's argument in his substantial-evidence issue is devoted
to an attack on the credibility of various witnesses. (3) The Board was the sole judge of the
credibility of witnesses testimony and the other evidence. See Southern Union Gas Co. v.
Railroad Comm'n, 692 S.W.2d 137, 141-42 (Tex. App.--Austin 1985, writ ref'd n.r.e.) An
agency may or may not accept the testimony of a witness, and may even accept "part of the
testimony of one witness and disregard the remainder." Id. The reviewing court may not
substitute its judgment for that of the Board about the weight of the evidence on questions
committed to the Board's discretion. The Board's witnesses included three certified public
accountants, all of whom were Lynn's former partners or employees who were familiar with his
practice; Lynn's former secretary, who was also familiar with his practice; the investigator and
prosecutor for the Dallas subcommittee of the supreme court's unauthorized-practice-of-law
committee, both of whom are attorneys; and HUD's district inspector general for the Dallas
region. Each witness was cross-examined by Lynn's attorney and questioned by the Board for
clarification of his or her testimony. Lynn appeared. Although represented by counsel, Lynn was
allowed to make an opening statement. Lynn called witnesses on his behalf. Lynn testified; the
Board order specifically found that Lynn was not a credible witness. The Board exercised its
discretion in evaluating the credibility of the witnesses; its order is supported by substantial
evidence. We overrule issue four.

Rational Connection


 In issue five, Lynn contends that, even if substantial evidence supports the Board's
findings of negative character traits, there is not a clear and rational connection between the
negative character traits found by the Board and the likelihood that he would injure a client or
obstruct the administration of justice. We disagree.

 In determining an applicant's fitness to practice law, the Board is guided by the
Texas Disciplinary Rules of Professional Conduct. See Tex. Disciplinary R. Prof. Conduct
(Conduct Rules); Board of Law Examiners v. Stevens, 868 S.W.2d 773, 777 (Tex. 1994), cert.
denied, 114 S. Ct. 2676 (1994). The disciplinary rules define "fitness" as "those qualities . . .
that enable a person to discharge a lawyer's responsibilities to clients in conformity with [these
rules]. Ordinarily a lack of fitness is indicated most clearly by a persistent inability to discharge,
or unreliability in carrying out, significant obligations." Conduct Rules terminology; see also
Stevens, 868 S.W.2d at 776. A negative character trait may involve "lack of trustworthiness in
carrying out responsibilities." Admission Rule 4(b). "A pattern of repeated offenses, even ones
of minor significance when considered separately, can indicate indifference to legal obligations
that legitimately could call a lawyer's overall fitness to practice into question." Stevens, 868
S.W.2d at 779 (quoting Conduct Rule 8.04, comment 5). The standards applied by the Board
specifically provide that "conduct involving dishonesty, fraud, deceit, or misrepresentation" is
directly relevant to an applicant's character and fitness. Conduct Rule 8.04(a)(3); see also
Stevens, 868 S.W.2d at 779. The Board is not required to prove "intent" to justify a finding of
dishonesty. Stevens, 868 S.W.2d at 780.

 The record shows the following: Lynn repeatedly violated or ignored state and
federal regulations in connection with his accountancy practice. He performed unauthorized legal
services for his clients. He issued financial reports that did not comply with accepted auditing
and accounting principles. He failed to disclose, indeed, may have concealed, relevant
information from HUD concerning federally assisted housing projects. All of these actions
reasonably demonstrate unreliability in carrying out significant obligations and establish a pattern
of repeated offenses.

 Lynn's violation of the professional standards imposed on him as a CPA is relevant
to determining whether he is likely to violate professional standards as a lawyer, and thus obstruct
the administration of justice. Lynn offers no cogent explanation of why he would probably
comply with the professional rules binding him as an attorney when he did not comply with
analogous professional rules binding him as a CPA. As a law student, he should have been aware
of the constraints imposed on the unauthorized practice of law. We note that his violations of the
unauthorized-practice laws were blatant, not borderline. The violations documented in the record
were not "close calls" involving tax advice, but pertained to deeds, incorporations, and advice
on litigation strategy. We overrule issue five.


Findings of Fact and Conclusions of Law



 In issue nine, appellant complains that the trial-court judge erred because she did
not file findings of fact and conclusions of law. Admission Rule 15(j) provides that the Board's
decision should be reviewed for whether that decision is reasonably supported by substantial
evidence from the certified record on file. In general, when the court's review is confined to the
agency record, as in the present case, there is not a record from which a judge can infer facts and
there is no necessity to file findings of fact and conclusions of law. See McMullen v. ERS, 935
S.W.2d 189, 192 (Tex. App.--Austin 1996, writ denied). Accordingly, the trial judge did not err
in failing to make findings of facts and conclusions of law. We overrule issue nine.


Constitutionality of Statute Regulating the Unauthorized Practice of Law



 In issue three, Lynn contends the statute regulating the unauthorized practice of law
is unconstitutionally vague. See Tex. Gov't Code Ann. § 81.101 (West 1998). Lynn brings a
facial attack on the statute. He does not challenge the statute on first amendment grounds. 
Ordinarily, a litigant cannot pursue or sustain a facial challenge to a law if that law is
constitutional in its application to that litigant. Broadrick v. Oklahoma, 413 U.S. 601, 610 (1973);
Texas Workers' Compensation Comm'n v. Garcia, 893 S.W.2d 504 (Tex. 1995). A vagueness
challenge to a statute that does not involve first amendment freedoms must be examined in light
of the facts of the case at hand. See United States v. Powell, 423 U.S. 87 (1975); Gant v. State,
814 S.W.2d 444, 453 (Tex. App.--Austin 1991, no pet.).

 We hold the statute is not unconstitutionally vague. See Drew v. Unauthorized
Practice of Law Comm., 970 S.W.2d 152, 155 (Tex. App.--Austin 1998, pet. denied). The test
for whether a statute is void for vagueness is whether it fails to give a person of ordinary
intelligence fair notice that his contemplated conduct is forbidden by the statute. Gant, 814
S.W.2d at 454. A statute that either forbids or requires doing an act in terms so vague that
persons of common intelligence must guess at its meaning and differ as to its application lacks the
first essential of due process of law. Chandler v. Jorge A. Gutierrez, P. C., 906 S.W.2d 195, 203
(Tex. App.--Austin 1995, writ denied). A law is unconstitutionally vague when persons regulated
by it are exposed to some risk or detriment without fair warning of the nature of the proscribed
conduct. J. B. Advertising, Inc. v. Sign Bd. of Appeals of City of Carrollton, 883 S.W.2d 443,
447-48 (Tex. App.--Eastland 1994, writ denied); Naranjo v. State, 890 S.W.2d 467, 470 (Tex.
App.--Corpus Christi 1994, pet. ref'd) (statutory language is not unconstitutionally vague if it
conveys a sufficient warning about the proscribed conduct when measured by common
understanding and practices.) A statute is not unconstitutionally vague simply because it fails to
include a definition of words or terms used. Ex parte Anderson, 902 S.W.2d 695, 699 (Tex.
App.--Austin 1995, pet. ref'd).

 The definition of the "practice of law" allows a person of ordinary intelligence to
understand the conduct that is regulated by the statute. Tex. Gov't Code Ann. § 81.101 (West
1988). The statute spells out acts such as preparing pleadings or other documents of legal
significance, appearing in court on behalf of another, and giving advice "requiring the use of legal
skill or knowledge." A person of ordinary intelligence can understand that the preparation of a
contract for sale or a deed of general warranty requires legal skill or knowledge as do such actions
as predicting the chance of success of an appeal. As previously noted, Lynn performed acts
unambiguously encompassed by the definition of "practice of law" in the statute. We overrule
issue three.

Res Judicata


 In issue two, Lynn argues that the Agreed Permanent Injunction and Agreed
Consent Order are res judicata on the issue of Lynn's good moral character and fitness to practice
law. We disagree. Lynn misconstrues the meaning of an agreed or consent order in that he
considers these orders exculpatory on the issues of whether he was engaging in the unauthorized
practice of law or violating accounting practices, apparently because the governing bodies allowed
the entry of an agreed order rather than insisting on a trial. The injunction order contains no
finding concerning past unauthorized practice of law; it enjoined Lynn prospectively from such
conduct. The agreed consent order specifically found that Lynn failed to meet governmental
auditing standards in preparing financial statements and violated accountancy board rules. 
Further, neither of these actions involved the Board of Law Examiners considering the issue of
Lynn's character and fitness to be admitted to the bar, even if any of the other elements of res
judicata and collateral estoppel had been met. We overrule issue two.


Right to Jury Trial



 In issue six, Lynn argues that he was entitled to a jury trial to review the Board's
findings concerning the unauthorized practice of law. As discussed above, Lynn's appeal involves
a decision of the Board evaluating Lynn's character and fitness to be admitted to the State Bar of
Texas, not a civil action brought by the Unauthorized Practice of Law Committee. Acts
committed by Lynn that constituted the unauthorized practice of law were one aspect of the
Board's evaluation of his character and fitness. The constitutional right to a jury trial does not
ordinarily attach to a suit for judicial review of administrative decisions. Texas Workers'
Compensation Comm'n v. Garcia, 893 S.W.2d 504, 527 (Tex. 1995); Texas Ass'n of Business v.
Air Control Bd., 852 S.W.2d 440, 450 (Tex. 1993). Admission Rule Fifteen expressly states that
the judicial review of the Board's decisions shall be "without a jury." Admission Rule 15(j)(4). 
We overrule issue six.


Due Process of Law



 In issue ten, appellant contends that he was deprived of due process of law and
informs the Court that due process as an issue is included throughout the brief. However,
inasmuch as we can ascertain, Lynn's only claim in that regard is that he did not receive adequate
notice in the proceedings against him.

 Lynn's argument concerns procedural due process. See University of Texas Medical
Sch. at Houston v. Than, 901 S.W.2d 926, 929 (Tex. 1995) (citing Mathews v. Eldridge, 424 U.S.
319, 335 (1976)). Procedural due process requires notice and an opportunity to be heard at a
meaningful time and in a meaningful manner. Id. at 929. Lynn appeared at a hearing in person
and with counsel, adduced evidence, cross-examined adverse witnesses, and presented argument
to the Board on questions of law and fact. He was given written notice of the evidence, including
the names of the Board's witnesses, and copies of documents to be used as exhibits against him,
in advance of the hearing. Similar procedural safeguards have been held to provide a "high level
of due process." Id. at 931. We overrule issue ten.

Remaining Issues


 Lynn has cited no authority in support of issues two (setting a hearing on Saturday),
seven (refusal to allow HUD order into evidence) and eight (period of time until re-petition
allowed). An appellant's brief must argue the facts of the case and cite authority to support
reversal. See Tex. R. App. P. 38.1(h). We have reviewed these issues, and in view of our
disposition of the other issues, they would not create reversible error. See Tex. R. App. P.
44.1(a)(1). Accordingly, we overrule these issues without further discussion. See Tex. R. App.
P. 47.1 (court of appeals to hand down written opinion that is as brief as practicable but addresses
every issue raised and necessary to the final disposition of the appeal) (emphasis added).

 Having overruled all of Lynn's issues, we affirm the judgment of the trial court.






 

 John Powers, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Powers*


Affirmed


Filed: February 4, 1999


Do Not Publish





* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The order stipulated that Lynn could petition for a redetermination of his character no earlier
than February 24, 1999.
2. Under the new Rules of Appellate Procedure, effective September 1, 1997, a party may bring
issues rather than points of error. See Tex. R. App. P. 38.1(e).
3. Lynn's briefing on this issue covers twenty-eight pages. Most is an item-by-item, witness-by-witness attack on credibility (usually, the witness's motive).



is character and fitness. The constitutional right to a jury trial does not
ordinarily attach to a suit for judicial review of administrative decisions. Texas Workers'
Compensation Comm'n v. Garcia, 893 S.W.2d 504, 527 (Tex. 1995); Texas Ass'n of Business v.
Air Control Bd., 852 S.W.2d 440, 450 (Tex. 1993). Admission Rule Fifteen expressly states that
the judicial review of the Board's decisions shall be "without a jury." Admission Rule 15(j)(4). 
We overrule issue six.


Due Process of Law



 In issue ten, appellant contends that he was deprived of due process of law and
informs the Court that due process as an issue is included throughout the brief. However,
inasmuch as we can ascertain, Lynn's only claim in that regard is that he did not receive adequate
notice in the proceedings against him.

 Lynn's argument concerns procedural due process. See University of Texas Medical
Sch. at Houston v. Than, 901 S.W.2d 926, 929 (Tex. 1995) (citing Mathews v. Eldridge, 424 U.S.
319, 335 (1976)). Procedural due process requires notice and an opportunity to be heard at a
meaningful time and in a meaningful manner. Id. at 929. Lynn appeared at a hearing in person
and with counsel, adduced evidence, cross-examined adverse witnesses, and presented argument
to the Board on questions of law and fact. He was given written notice of the evidence, including
the names of the Board's witnesses, and copies of documents to be used as exhibits against him,
in advance of the hearing. Similar procedural safeguards have been held to provide a "high level
of due process." Id. at 931. We overrule issue ten.

Remaining Issues


 Lynn has cited no authority in support of issues two (setting a hearing on Saturday),
seven (refusal to allow HUD order into evidence) and eight (period of time until re-petition
allowed). An appellant's brief must argue the facts of the case and cite authority to support
reversal. See Tex. R. App. P. 38.1(h). We have reviewed these issues, and in view of our
disposition of the other issues, they would not create reversible error. See Tex. R. App. P.
44.1(a)(1). Accordingly, we overrule these issues without further discussion. See Tex. R. App.
P. 47.1 (court of appeals to hand down written opinion that is as brief as practicable but addresses
every issue raised and necessary to the final disposition of the appeal) (emphasis added).

 Having overruled all of Lynn's issues, we affirm the judgment of the trial court.






 

 John Powers, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Powers*


Affirmed


Filed: February 4, 1999


Do Not Publish





* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. The order stipulated that Lynn could petition for a redetermination of his character no earlier
than February 24, 1999.
2. Under the new Rules of Appellate Procedure, effective September 1, 1997, a party may bring
issues rather than points of error. See Tex. R. App. P. 38.1(e).
3.